IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOOD & FRIENDS, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CURVES INTERNATIONAL, INC., )<br>FITNESS MANAGEMENT LLC, )<br>CURVES CLEVELAND PARK, )<br>and DOES 1-50 )<br>)<br>Defendants. ) | Civil Action No. 05 1211 (CKK)<br><br>Under Seal |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY TO
<u>LEARN THE IDENTITIES OF DOE DEFENDANTS</u>**

Curves' Memorandum in Opposition ("Curves Opp.") misapprehends the limited nature of the discovery Food & Friends seeks and the fundamental need for early discovery in this case.

As discussed more fully below: (1) Food & Friends critically needs this discovery now, and faces the prospect of irreversible prejudice without it; (2) the discovery sought is exceptionally limited, and cannot credibly be said to present a burden for Curves or any Curves franchisee; (3) the authorities cited by Curves do not involve circumstances in which a party needs to identify Doe Defendants or preserve essential evidence that otherwise likely would be lost, and are thus inapposite; and (4) the "Texas action" -- which does not involve any Curves franchisees, and thus would not affect this Action against Curves franchisees even if it proceeded -- is irrelevant to the instant motion.



RECEIVED

JUL 1 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### 1. Food & Friends Has An Urgent Need For The Very Limited Discovery It Seeks.

As explained in its opening memorandum, Food & Friends needs this early discovery for two separate reasons: to identify and bring before this Court the appropriate Doe defendants that have infringed Food & Friends' registered trademarks, and to preserve evidence critical to this Action that is likely to be lost in the intervening months before discovery in the normal course would begin. Curves has not meaningfully addressed either point.

Curves principally argues that "the information that plaintiff seeks regarding all 'Doe Defendants' is public knowledge and is readily ascertainable." Curves Opp. at 10. That misses the crux of the needed discovery. Of course Food & Friends can learn the retail names of the various local Curves franchisees. However, Food & Friends cannot know which of those franchisees participated in the 2005 Curves food drive or which promotional and marketing materials those franchisees used in connection with the food drive. Curves strongly encourages all of its franchisees to participate in the food drive, using it as a marketing gimmick to sell more Curves memberships. *See* Exhibit B to the Declaration of Steven B. Fabrizio, dated July 9, 2005 ("Fabrizio Decl."), filed herewith. Food & Friends has every reason to believe that many, if not all, Curves franchisees in the area participated in the food drive. Based on information Food & Friends has been able to gather on its own, it appears that those franchisees used a range of promotional and marketing materials. Some of the materials used were identical to those materials prohibited under the 2004 settlement. Other franchisees used different promotional materials that Food & Friends believes nonetheless infringe its registered trademarks. Still other franchisees may have used additional infringing materials. Food & Friends cannot know without the requested discovery. What is clear is that Curves did nothing to inform its franchisees of the 2004 settlement or to dissuade them in any way from infringing Food & Friends' registered

2

trademarks. To the contrary, Food & Friends believes that Curves acted in a manner that encouraged its franchisees to continue infringing Food & Friends' trademarks.

From Food & Friends' perspective, Curves' opposition to this motion is a bit of "damned if you do, damned if you don't." Had Food & Friends simply sued each area Curves franchisee, Curves inevitably would have asserted that Food & Friends filed without specific information about which franchisees used which materials. Because Food & Friends erred on the side of caution and used the Doe process, Curves now objects to the discovery Food & Friends needs to bring the proper parties before the Court.

Curves chides Food & Friends for acting responsibly before filing suit, and conducting as though an investigation as it reasonably could. *See* Curves Opp. at 10. However, the fact that Food & Friends learned through its own investigation that certain area franchisees infringed the Food & Friends trademarks or that several area franchisees already have discarded (or claim to have discarded) the materials used in the 2005 food drive does not, as Curves argues, demonstrate an absence of a need for the request of discovery. To the contrary, it demonstrates that Food & Friends has done all it can without the discovery and now needs the discovery to identify the Doe Defendants and preserve critical evidence. Food & Friends already has named as defendants those franchisees for which it had specific information. Without the requested discovery, Food & Friends has no practical means to identify and bring before the Court the remaining infringers.

Curves likewise dismisses the need to preserve critical evidence, but fundamentally cannot argue with the reality that evidence will in fact be lost if this discovery is delayed. Curves responds first by arguing that Food & Friends did not submit a sworn affidavit attesting to the facts its opening memorandum that several area franchisees already have discarded (or

3

claim to have discarded) materials used in the food drive. Curves Opp. at 11. Those facts were the result of counsel's investigation, which of course can be accepted by the Court. Nevertheless, Food & Friends submits herewith a declaration of counsel attesting to the fact that persons under counsel's direction visited several area Curves franchisees to request copies of the 2005 promotional and marketing materials and were told that the franchisee had already discarded the material. Fabrizio Decl., ¶¶ 3-4. In some cases, that may have been true; in other cases, it likely reflected the reluctance of the franchisee to provide the materials voluntarily. Without these materials, Food & Friends will be severely prejudiced in its ability to prove its case and achieve complete relief.

Curves also argues that Food & Friends somehow deserves to suffer this prejudice because it waited a little over two months before filing suit. Curves Opp. at 11. However, Food & Friends contacted Curves on May 3rd about the infringements and was engaged in a process of discussion with Curves from that point forward. Fabrizio Decl., ¶¶ 5-15. At first Curves claimed not to know anything about the infringing materials identified by Food & Friends. Fabrizio Decl., ¶¶ 6-7. It was only after Food & Friends persisted with its own investigation, and found other franchisees that had used materials infringing the Food & Friends trademark, that Curves acknowledged that it had made some of the materials available to its franchisees. Fabrizio Decl., ¶¶ 7-9. Food & Friends began investigating the continuing infringement by Curves and its franchisees almost immediately upon learning about it in April. Fabrizio Decl., ¶ 2.

Once again, contrary to the impression Curves attempts to create, the record here demonstrates that Food & Friends acted responsibly in addressing the infringement by Curves

and its franchisees. Food & Friends has progressed as far as possible without the requested discovery.

### 2. The Requested Discovery Is Not Burdensome.

Curves argues that "[r]esponding to plaintiff's broad request will significantly hinder and disrupt Curves' and its franchisee's day-to-day business operations." Curves Opp. at 12. Curves greatly exaggerates.

Food & Friends seeks only that limited discovery necessary at this juncture to identify those franchisees that infringed the Food & Friends trademarks and to secure copies of the promotional and related materials used in connection with that infringement. At most, a franchisee's entire production of documents in response to the proposed subpoena would constitute a tiny handful of documents -- probably in the magnitude of a quarter of an inch stack. The administrative time it might take to respond to the proposed subpoena would likely be measured in minutes. It would hardly "hinder and disrupt" business operations.

Moreover, notwithstanding Curves' dire predictions that "the court can reasonably expect that many, if not all, of these Doe Defendants will file motions to quash each of these subpoenas," Curves Opp. at 8, there is simply no reason or basis for any franchisee to object to the subpoena. The documents sought are not privileged, and they are not proprietary or confidential -- most were displayed publicly. And, as stated, with the volume of responsive documents being so trivial, no franchisee could rationally object on the basis of burden. It is notable that the named franchisee defendants have not opposed this motion.[1]

---

[1] Curves' argument that the "proposed relief is so vague as to geographic area in question that compliance would be impossible," Curves Opp. 5, is unfounded. As Curves acknowledges, the Curves website readily identifies 42 franchise locations in the area. Curves Opp. at 8. In discussion with counsel for Curves, Food & Friends has offered to stipulate that its early discovery would be limited to those franchise locations. Fabrizio Decl., ¶ 17.

Curves, ultimately, is left with the argument that the "sheer number of potential document subpoenas alone is overbroad and unreasonable." Curves Opp. at 8. Curves tries to manufacture an "aggregate" burden because plainly the burden to any individual franchisee or to Curves itself would be minimal. Curves is a $2 billion company with over 9,000 franchisee locations. Food & Friends seeks leave to serve subpoenas on a relative few franchisees in the immediate Washington, DC area. Curves claims there are 42 locations in the DC area. Curves Opp. at 5. However, since Curves sells franchises by territory, *see* www.curves.com/franchise_info, it may well be that those 42 locations in fact involve only a handful of individual franchisees, each owning multiple locations. That, in fact, is the sole purpose of the limited discovery Food & Friends seeks from Curves itself -- the identities of the franchisees who own the 42 locations in the DC area.

Two additional points are worth emphasizing about Curves' arguments on burden. First, and most obviously, if several area franchisees have relevant information it is because the scope of the infringement of Food & Friends registered trademarks was widespread. Second, any burden, minimal as it is, should not militate against in Food & Friends' motion for immediate discovery. There is no question that Food & Friends would be permitted to serve the proposed subpoenas in the ordinary course of discovery. The only question is whether this Court should grant Food & Friends leave to serve the discovery early, so that Food & Friends may preserve critical evidence and promptly bring all appropriate defendants into the Action. Whether the discovery occurs now or in the normal course a few months from now will not alter the burden. Accordingly, Food & Friends respectfully submits that the marginal burden to Curves and its franchisees from the Court granting this motion is non-existent, while the prejudice to Food & Friends in the absence of early discovery is manifest and potentially irreversible.

### 3. The Authorities Cited By Curves Do Not Address Doe Defendants Or Preservation Of Critical Evidence, And Are Therefore Inapposite.

Curves argues that the controlling authority is *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005). But neither *In re Fannie Mae* nor the *Notoro* case discussed therein and also cited by Curves, *Notoro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), remotely address the issues presented here: identifying Doe defendants and preserving critical evidence. They are simply inapposite. In *In re Fannie Mae*, the court observed that "the discovery requests made by Plaintiff Kellmer appear to be a thinly veiled attempt to circumvent the normal litigation process." *In re Fannie Mae*, 227 F.R.D. at 143. And, in *Notoro*, during the Democratic primary for New York governor, plaintiffs (members of an opposing political party) asserted claims about actions that then-Mayor Koch might take <u>if</u> he won the primary and then the general election and then took office as Governor of New York. *Notoro*, 95 F.R.D. at 405. Plaintiffs sought an immediate deposition of candidate Koch. *Id.* at 404-05. After noting that early depositions present particular concerns about defendants "unwarily incriminating themselves before they have a chance to review the facts of the case" (*id.* at 405), the court further noted the extreme circumstances therein presented: "a deposition of the defendant as a candidate under the inquisition of counsel for an opposition political party without sufficient advance notice." *Id.* at 406. Mindful that in "the heat of campaigning parties use many tactics to gain political advantage," the court expressed reluctance to "interfer[ ] in an election campaign." *Id.* Even then, the court denied the motion *without prejudice* to re-filing. *Id.*

Here, none of those concerns are present. Food & Friends seeks a few documents, not full-blown deposition discovery. Moreover, there is no suggestion -- nor could there be -- that Food & Friends is merely trying to circumvent normal discovery processes. Food & Friends is seeking very limited early discovery based on demonstrated need; the discovery is limited to

7

addressing the demonstrated need; and Food & Friends intends thereafter to amend its complaint and follow all normal discovery processes. Although the standards advanced by Curves do not control, based on its demonstrated need, including preservation of crucial evidence that might be forever lost, Food & Friends easily would meet those standards.

Faced with a plaintiff's need to identify Doe defendants (even absent concern about preservation of evidence), courts in this jurisdiction -- including this Court -- have granted the precise relief Food & Friends seeks here. *E.g.*, Memorandum Opinion, *UMG Recordings et al. v. John Does 1-199*, Civil Action No. 04-093 (Kollar-Kotelly, J.), March 10, 2004 ("It is clear to the Court that Defendants must be identified before this suit can progress further"). Indeed, "Courts have wide discretion in discovery matters and may order expedited discovery under appropriate circumstances." Order, *Warner Bros. Records Inc. et al. v. John Doe*, Civil Action No. 04-1673 (Collyer, J.), October 12, 2004. *See also, e.g.*, Order Granting Motion For Leave To Take Immediate Discovery, *Atlantic Recording Corp. et al. v. Does 1-3*, Civil Action No. 04-0475 (Lamberth, J.), March 31, 2004; Order Granting Motion For Leave To Take Immediate Discovery, *Motown Record Company, L.P. et al. v. Does 1-95*, Civil Action No. 04-2179 (Robertson, J.), December 20, 2004; Order, *BMG Music et al. v. Does 1-3*, Civil Action No. 04-0476 (Huvelle, J.), March 31, 2004; Order, *Arista Records, Inc. et al. v. Sakfield Holding Company S.L. et al.*, Civil Action No. 03-1474 (Lambert, J.), July 22, 2003. (Copies of the referenced unpublished decisions are collected as Exhibit H to the Fabrizio Declaration.)

### 4. The Texas Declaratory Judgment Action Is Irrelevant To This Motion.

Lastly, Curves urges the Court to deny this motion because Curves has filed a Declaratory Judgment action in the Western District of Texas. Curves Opp. at 12. That action, however, has no bearing on this Motion.

First, Curves alone is the putative plaintiff in that Texas action. The DC area franchisees that are parties to this Action are <u>not</u> parties in the Texas action -- nor could they be, for obvious personal jurisdiction reasons. Thus, regardless of the disposition of the Texas lawsuit, this Action against the DC area Curves franchisees will proceed. The early discovery sought through this motion relates entirely to the action against the Curves franchisees -- whether Curves is a party to this suit or not, the same discovery would be necessary. Thus, there cannot possibly be any "waste" of this Court's resources as Curves argues. Curves Opp. at 12.

Moreover, the record compels a conclusion that Curves' filing of the Texas declaratory judgment was improper. Food & Friends will be filing a motion to dismiss that action. Following three weeks of unsuccessful settlement discussions, on May 25, 2005, counsel for Food & Friends sent to Curves a final e-mail further detailing the basis of Food & Friends' belief that the various promotional materials used by Curves and its franchisees violated the Food & Friends registered trademarks. *See* Fabrizio Decl., ¶ 10, Ex. C. General counsel for Curves responded a couple of days later stating that he and his colleagues were attending a corporate retreat, but that he would try to get Food & Friends a response by Friday, June 3rd. *See* Fabrizio Decl., ¶ 11, Ex. D. Counsel for Food & Friends agreed to delay taking any action in DC for at least a week. *See* Fabrizio Decl., ¶ 12, Ex. E ("We'll take no action through the end of next week and wait to hear from you"). On June 2nd, general counsel for Curves requested additional time purportedly because the Curves marketing director was on vacation. *See* Fabrizio Decl., ¶ 13, Ex. F. On June 6th, general counsel for Curves sent the promised response. In it, he professed that "I sincerely want to avoid litigation" and concluded his response by saying "I will wait to hear from you as to how you believe we can put a peaceful end to this." *See* Fabrizio Decl., ¶ 14, Ex. G.

Unbeknownst to Food & Friends, at that very moment, Curves was filing its complaint for declaratory judgment in the Western District of Texas (filed June 6th; the same day as Curves' response). Fabrizio Decl., ¶¶ 15-16. It seems that while many at Curves were at a corporate retreat or on vacation, Curves' litigation counsel was busy at work preparing a complaint. Putting aside the propriety of Curves' conduct, the Texas action is unquestionably an "anticipatory litigation" and thus not entitled to priority in any sense over this Action. *See, e.g., St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994); *909 Corp. v. Village of Bollingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex 1990) ("The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum"); *id.* at 1293 ("[T]he court has little difficulty in concluding that this action is a preemptive strike. Application of the 'first-filed' rule would penalize the Fund for its efforts to settle this matter out of court."); *Kinetic Concepts*, 2004 U.S. Dist. LEXIS 17969, at *8 (W.D. Tex. Sept. 9, 2004) ("an action for declaration of non-infringement of a trademark should give way to a later-filed suit for trademark infringement"); *Tape & Techs. V. Davlyn Mfg. Co.*, 2005 U.S. Dist. LEXIS 8291, at *5-6 (W.D. Tex. May 6, 2005); *PAJ, Inc. v. Yurman Design, Inc.*, 1999 U.S. Dist. LEXIS 1424, *9-12 (N.D. Tex. Feb. 9, 1999) (application of the first-to-file rule would unfairly penalize party that made a good-faith effort to resolve the matter out-of-court).

Independently, the Texas action will be dismissed for lack of personal jurisdiction in that Food & Friends unquestionably is not subject to personal jurisdiction in the Western District of Texas. Without belaboring the point here, Food & Friends is a small DC charity. It has no offices, employees, vendors, clients, or dealings in or with Texas.

Accordingly, the Texas action inevitably will be dismissed and, in any event, would have no bearing on litigation in this Court against the DC area Curves franchisees.

## Conclusion

For the foregoing reasons, and those contained in Food & Friends' opening memorandum, the requested leave to take immediate discovery should be granted.

Respectfully submitted,

By: _____
Steven B. Fabrizio
(D.C. Bar No. 436482)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005-3823
Tel: 202.639.6000
Fax: 202.639.6066

*Attorneys for Plaintiff*
*Food & Friends, Inc.*

Dated: July 11, 2005

## Certificate of Service

I hereby certify that on Monday, July 11, 2005, I caused true and correct copies of the foregoing Reply Memorandum In Support of Motion For Leave To Take Immediate Discovery To Learn The Identities of Doe Defendants and accompanying Declaration of Steven B. Fabrizio to be served on Defendants or counsel for Defendants by U.S. Mail.

_____
Steven B. Fabrizio