IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOOD & FRIENDS, INC.

    Plaintiff,

v.

CURVES INTERNATIONAL, INC.,
FITNESS MANAGEMENT LLC,
CURVES CLEVELAND PARK,
and Does 1-50

    Defendants.

Civil Action No. 05-1211 (CKK)

### DEFENDANT'S MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

Defendant Curves International, Inc., (hereinafter "Curves" or "defendant"), by and through counsel, respectfully submits this memorandum in opposition to Food & Friends, Inc.'s (hereinafter "Food & Friends" or "plaintiff") Motion For Leave to Take Immediate Discovery to Learn the Identities of Doe Defendants.

### INTRODUCTION

Defendant Curves is the largest fitness franchise in the world with over 9,000 locations worldwide. Curves was the first fitness and weight loss facility to dedicate itself to providing affordable, one-stop exercise and nutritional information for women. Seven years ago, Curves began to conduct an annual nationwide food drive in an effort to assist those individuals throughout the country who are less fortunate. The food drive is held once a year during the month of March. During the food drive, Curves' franchisees collect food donations from current members as well as new members. As an enticement to donate food, Curves' franchisees waive the initial membership fee for new members who bring in a full grocery bag of food.

In March of 2004, Curves conducted its sixth annual food drive. In connection with that food drive, Curves distributed promotional materials to its franchisees which depicted a grocery bag with food coming out of the top and the words "food for friends" across the front of the bag.[1] Plaintiff notified Curves that it believed this logo infringed its two federally registered trademarks, for "Food & Friends," U.S. Trademark Reg. Nos. 2,217,266 and 2,214,556 (hereinafter collectively "plaintiff's trademarks"). To avoid litigation, the parties agreed to an amicable settlement on May 20, 2004.[2] The settlement agreement was drafted by plaintiff's counsel in this case, Steve Fabrizio, who is also a member of plaintiff Food & Friends' board of directors and serves as its general counsel.[3] Under the terms of the settlement, Curves paid plaintiff $35,000 in exchange for plaintiff releasing any and all claims against Curves for alleged trademark infringement that occurred before the date of the settlement.[4]

During the month of March, 2005 Curves held its seventh annual food drive. Once again, Curves created and distributed promotional materials to its franchisees which were to be used to advertise the food drive. This time, however, the promotional materials depicted a completely different logo. As demanded initially by plaintiff's executive director in February 2004[5], the words "food for friends" were not used with a grocery bag image.[6] Moreover, the grocery bag

---

[1] An example of the promotional materials that were distributed for the March 2004 food drive is attached as Ex. 1 to the Declaration of Roger Schmidt (hereinafter "Schmidt Decl.") filed in conjunction herewith.

[2] A copy of the settlement agreement is attached as Schmidt Decl. Ex. 2.

[3] A list of the board of directors for plaintiff Food & Friends is attached as Schmidt Decl. Ex. 3.

[4] See Schmidt Decl. Ex. 2.

[5] See Feb. 18, 2004 letter from Craig M. Shniderman to Michael Raymond attached as Schmidt Decl. Ex. 4.

[6] An example of the promotional materials that were distributed for the March 2005 food drive is attached as Schmidt Decl. Ex. 5.

portion of the food drive logo was rendered as a significantly smaller element of the entire logo.[7] Specifically, the logo depicted a woman pushing a shopping cart containing full bags of groceries with "Curves" written across the middle of the bag.[8] Additionally, to remove any confusion, the words "Curves Food Drive" appeared at the top of the promotional material and Curves slogan for its fitness centers "Curves. The power to amaze yourself" appeared at the bottom.[9] Those wishing to donate food were directed to their local Curves' fitness centers and were informed that "All groceries will be donated to local food banks."[10]

Approximately a month and half after the March 2005 food drive concluded, Curves was contacted by plaintiff's counsel, Mr. Fabrizio, who alleged that the changes Curves had made to its logo were not sufficient and that plaintiff still believed the logo infringed plaintiff's trademarks. Mr. Fabrizio informed Curves in an e-mail that he had gathered allegedly infringing materials from D.C. area Curves' franchisees. Specifically, in a May 3, 2005 e-mail to Curves' in-house counsel, Mr. Fabrizio attached promotional materials in which he indicated he had gathered from local Curves franchises earlier in 2005:

> "The [attached] file named 'Curves Food Drive Material 2005' are materials *we obtained from local Curves franchises this year.*"[11]

---

[7] *See* Schmidt Decl. Ex. 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *See* May 3, 2005 e-mail from Steven B. Fabrizio to Roger Schmidt attached as Schmidt Decl. Ex. 6 (emphasis added).

3

A little over two weeks later, Mr. Fabrizio sent another e-mail to Curves' in-house counsel informing him that he had gathered additional allegedly infringing materials from other D.C. area Curves' franchisees:

> "Roger -- We have continued our own investigation and fact gathering and *have information on additional Curves locations* using materials with a grocery bag logo that infringes the Food & Friends mark. The documents attached to this e-mail are (1) an additional flyer used by *four* Curves locations in Arlington, Virginia, which is immediately outside D.C.; and (2) a document that appears to have been sent by Curves corporate to franchisees."[12]

Thereafter, the parties engaged in settlement discussions which soon reached an impasse. On June 6, 2005, Curves filed a declaratory judgment action against Food & Friends in the United States District Court for the Western District of Texas.[13] In that suit, Curves is seeking a declaration that its logo for its March 2005 food drive does not infringe plaintiff's trademarks.

Fourteen days later, plaintiff filed its complaint in the case at bar and concurrently moved this Court to grant it leave to conduct expedited discovery so that it can: (1) identify Doe Defendants, name them as defendants in this case, and served them with process;[14] and (2) serve document subpoenas on those Doe Defendants, which represent every Curves' franchisee "in Washington, D.C. and the surround[ing] Maryland and Virginia regions seeking promotional, marketing and other materials related to the 2005 Curves food drive."[15]

---

[12] *See* May 19, 2005 e-mail from Steven B. Fabrizio to Roger Schmidt attached as Schmidt Decl. Ex. 7 (emphasis added).

[13] A file-stamped copy of Curves' complaint against Food & Friends is attached as Schmidt Decl. Ex. 8.

[14] Pl.'s Mem. in Support of Mot. For Leave to Take Immediate Discovery to Learn the Identities of Doe Defendants (hereinafter "Pl.'s Br.") at 1; Pl.'s Proposed Order at ¶ 1.

[15] Pl.'s Proposed Order at ¶ 2.

4

Regarding plaintiff's request for the identify of Doe Defendants, plaintiff already knows the identity of "several" Curves area franchisees. For example, plaintiff claims in its brief that its "investigation" has revealed that "several D.C. area franchisees already have discarded or claim to have discarded all materials in the 2005 food drive..."[16] The identity of the remainder of the Doe Defendants that plaintiff has not identified is easily ascertainable through Curves' website, www.curves.com. In fact, plaintiff can determine the address and telephone number of every single Curves' franchisee in the entire country by using a zip code search on the Curves website. For example, a search on the 20001 zip code for the District of Columbia revealed the contact information for 42 Curves' franchisees, as well as the estimated distance those locations are from the 20001 area code.[17]

Finally, as to plaintiff's request to serve document subpoenas, plaintiff's proposed relief is so vague as to the geographic area in question that compliance would be impossible without further guidance from the Court. No definition exists to clearly define *"and the surrounding Maryland and Virginia regions."*

Plaintiff's motion fails to meet the applicable tests of this Court for granting expedited discovery. Moreover, plaintiff's pleading of "Doe Defendants," who are the subject of the requested discovery, is improper. Finally, defendant's declaratory judgment action for non-infringement pending in the Western District of Texas predates plaintiff's complaint in this Court and has priority over it. Permitting expedited discovery before this Court determines whether this case should remain in this District or be transferred is premature, burdensome and only

---

[16] Pl.'s Br. at 4. *See also* notes 11 and 12 *supra*.

[17] The list of the Curves' franchisees in or around the 20001 zip code is attached as Schmidt Decl. Ex. 9.

5

serves to complicate the ultimate management of this litigation. Plaintiff's motion should be denied.

## ARGUMENT

In deciding a motion for expedited discovery, this Court applies the two "common judicial approaches" to resolution of such motions: (1) the test set forth in *Notaro v. Koch*, 95 F.R.D. 408 (S.D.N.Y. 1982) (the "*Notaro* Test"), and (2) the "reasonableness test." *In re: Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005). Plaintiff fails to meet their burden under either standard.[18]

### I. PLAINTIFF FAILS TO SATISFY THE *NOTARO* TEST.

In *In re: Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005), this Court applied the *Notaro* test in denying a motion for expedited discovery. This "stringent standard" requires plaintiff to demonstrate the following:

(1) irreparable injury;

(2) some probability of success on the merits;

(3) some connection between the expedited discovery and the avoidance of irreparable injury; ***and***

(4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*In re: Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (citing *Notaro*, 95 F.R.D. at 405) (emphasis added). Given that plaintiff has failed to identify the *Notaro* test as one that this Court uses to resolve motions for expedited discovery, it is not surprising that plaintiff fails to argue that it meets any of these elements, much less all of them.

---

[18] Plaintiff cites no case from this jurisdiction addressing the standard for deciding a motion for expedited discovery.

6

Further, even if such arguments could somehow be extracted from plaintiff's brief, it has not submitted a single affidavit setting forth sufficient facts (or any facts for that matter) that could provide a basis for the Court to determine if plaintiff satisfies the *Notaro* test. Indeed, in *Sinclair Nat'l Bank v. Office of the Comptroller of the Currency*, No. 00-2398, 2000 U.S. Dist. LEXIS 17968 at *8-*12 (D.D.C. Dec. 7, 2000), plaintiff requested expedited discovery based on *submitted* factual affidavits attesting to the elements of the *Notaro* test. However, this Court denied that request, holding that the affidavits failed to establish two of the elements of the *Notaro* test, namely, irreparable injury and likelihood of success on the merits. *Id.*.

The Court concluded that because plaintiff's affidavits offered only "speculative references" to irreparable harm and were simply too "conclusory" to establish a likelihood of success on the merits, the Court had "no basis upon which to conclude" that plaintiff had satisfied the elements of the *Notaro* test. *Id.* at *9-*11. As in *Sinclair Nat'l Bank*, plaintiff's failure to submit *any* affidavits in support of its motion leaves the Court with "no basis upon which to conclude" that the *Notaro* test has been satisfied. Plaintiff's motion should be denied.

II.     **PLAINTIFF FAILS TO SATISFY THE "REASONABLENESS TEST."**

The second standard this Court has used to resolve motions for expedited discovery is the "reasonableness test." *In re: Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (citing *Entm't Tech. Corp. v. Walt Disney Imagineering*, 2003 U.S. Dist. LEXIS 19832, No. 03-3546, at *3 (E.D. Pa. Oct. 2, 2003). This test requires the Court "to decide the motion based on the 'reasonableness of the request in light of all of the surrounding circumstances....'" *Id.* Among the factors to be considered by the Court are:

    (1) whether a preliminary injunction is pending;

    (2) the breadth of the discovery requests;

7

      (3) the purpose for requesting the expedited discovery;

      (4) the burden on the defendants to comply with the requests; and

      (5) how far in advance of the typical discovery process the request was made.

*Id.* at 143. Based on the "surrounding circumstances" and in particular the above-cited factors, plaintiff's request for expedited discovery is unreasonable and should be denied.

### A. Plaintiff Fails to Satisfy the First and Second Factors of the Reasonableness Test.

Plaintiff has not filed a motion for a preliminary injunction and therefore does not meet the first factor of the reasonableness test.

Second, plaintiff's expedited discovery requests are overly broad. Plaintiff asks that it be allowed to propound interrogatories on defendant Curves to "identify the names, addresses and other contact information for each owner of a Curves franchise in Washington, D.C. and the surrounding Maryland and Virginia regions." *See* Pl.'s Proposed Order at ¶ 1. Once these alleged "Doe Defendants" are identified, plaintiff then wishes to serve them all with document subpoenas for "promotional, marketing and other materials related to the 2005 Curves food drive." Pl.'s Proposed Order at ¶ 2. As noted above, plaintiff requests leave to serve some number in excess of 42 subpoenas on all of defendant's franchisees in "Washington, D.C. and the surrounding Maryland and Virginia regions." The shear number of potential document subpoenas alone is overbroad and unreasonable. Further, the Court can reasonably expect that many, if not all, of these Doe Defendants will file motions to quash each of these subpoenas, leaving the Court, and perhaps its neighboring sister district courts, with the burden to resolve countless discovery disputes. This request is simply overbroad and plaintiff fails to satisfy the second factor of the reasonableness test.

8

### B. The Third Factor of the Reasonableness Test Weighs Heavily in Favor of Denying Plaintiff's Motion.

As to the third factor of the reasonableness test, plaintiff's avowed purpose for requesting expedited discovery is two-fold: (1) to identify the "Doe Defendants" who have allegedly infringed plaintiff's trademarks and to serve them with process, Pl.'s Br. at 6; and (2) to preserve allegedly infringing materials which plaintiff claims–without any factual support by way of affidavit–some of the Doe Defendants may discard. Pl.'s Br. at 4, 7.

In support of its first reason for expedited discovery–to identify "Doe Defendants"– plaintiff claims that:

> "Courts in *this* and other circuits routinely permit *immediate discovery* where plaintiffs are not able to determine the identity of the defendants."

Pl.'s Br. at 4 (emphasis added).[19]  As a threshold matter, plaintiff's pleading of "Doe

---

[19] Plaintiff cites no case from this jurisdiction supporting this assertion. Moreover, this assertion mischaracterizes all of the cases on which plaintiff relies. None of the cited cases make any reference whatsoever to allowing "immediate discovery." The cases simply hold that it is improper to *dismiss* actions against Doe defendants where the identity of the defendant may be ascertained through the normal discovery process. *See, e.g., Schiff v. Kennedy,* 691 F.2d 196, 197-198 (4th Cir. 1982) (per curiam) (holding that unnamed individuals are proper parties if the individuals can be identified through discovery); *Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999) (prohibiting dismissal of unnamed defendants, because identity could be ascertained through discovery); *Valentin v. Dinkins,* 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal because plaintiff was entitled to discovery to reveal defendant's identity); *Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir. 1992) (permitting joinder of Doe defendant, because identity could be obtained through discovery); *Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir. 1985) ("'Rather than dismissing the claim, the court should have ordered disclosure of the Office Doe's identity'…by the other defendants named and served or permitted the plaintiff to identify the officer through discovery"); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir. 1980) (permitting party who "is ignorant of defendants' true identity … to obtain their identity through limited discovery.").

Defendants" in this case is improper.[20] The use of Doe Defendants is only appropriate where plaintiff is truly "ignorant" of the identity of the Doe defendants. *Maclin*, 627 F.2d at 87. This is obviously not such a case. Plaintiff admits that it is aware of the alleged conduct–and therefore the identity–of the supposedly unknown Doe defendants:

> "Plaintiff's investigation has revealed that *several* D.C. area franchisees already have discarded (or claim to have discarded) all materials used in the 2005 food drive ...."

Pl.'s Br. at 4 (emphasis added).[21] Plaintiff's position regarding its lack of knowledge of the identify of the alleged Doe Defendants is untenable. It claims that it knows what several of the Doe Defendants have done yet it is still "ignorant" of the identities of those Doe Defendants. If plaintiff knows the identities of at least "several" of the Doe Defendants then there is no reason for expedited discovery from defendant Curves as to them.

Further, the information that plaintiff seeks regarding all "Doe Defendants" is public knowledge and is readily ascertainable. Indeed, the address and telephone number of *all* of defendant Curves' franchisees in the entire country–including the D.C. metropolitan area– is available on its website, www.curves.com, organized by zip code. By simply entering a zip code a search is conducted that lists all of the Curves' franchisees located within or near the entered

---

[20] "As a general rule, the use of "John Doe" to identify a defendant is not favored [citation omitted]. However, situations arise, . . . where the identity of the alleged defendants will not be known prior to the filing of a complaint." *Gillespie*, 627 F.2d at 642. *See also Armstrong v. United States Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997)("Moreover, there is no provision in the federal statutes or federal rules of civil procedure for the use of fictitious defendants. [citations omitted]. Accordingly, the court dismisses plaintiff's claims against these unidentified individuals.").

[21] *See also* Schmidt Decl. Exs. 6 & 7.

10

zip code providing their address and telephone number.[22] There is no need for expedited discovery for information that is readily available.

As to the second purpose for plaintiff's request for expedited discovery–to preserve allegedly infringing materials that may be discarded–plaintiff claims that:

> "[S]everal D.C. area franchisees already have discarded the infringing marketing and promotional materials, or claim they have done so. Undoubtedly, many if not most other franchisees will soon permanently discard their marketing and promotional materials."

Pl.'s Br. at 7. There is simply no factual support for this assertion anywhere in the record. Further, even if plaintiff could somehow muster such factual support, plaintiff could have obtained the allegedly infringing materials before this lawsuit was filed. Indeed, plaintiff admits that the Curves' food drive, which is subject to its expedited discovery request, concluded in March of this year. *See* Pl.'s Br. at 7. Plaintiff did not file suit until June 20, 2005. Plaintiff could have and should have identified the Curves' franchisees (by way of the Curves website or the Yellow Pages) in March and collected allegedly infringing materials *before* it filed its complaint. Instead, it did nothing, and now seeks extraordinary relief from this Court to obtain materials that, with the exercise of reasonable diligence, it would already have.

### C. The Fourth Factor of the Reasonableness Test-The Burden on Defendant to Comply with the Requests is Extreme.

The fourth factor of the reasonableness test requires the Court to consider the burden on the defendant to comply with the requests for expedited discovery. *In re: Fannie Mae Derivative Litig.*, 227 F.R.D. at 143. Contrary to plaintiff's assertions, the burden on the defendant and the third-party "Doe Defendants" to comply is significant. As noted above, plaintiff seeks leave to

---

[22] *See* Ex. 10.

11

file well over 42 document subpoenas on all of defendants' franchisees "in Washington, D.C. and the surround[ing] Maryland and Virginia regions seeking promotional, marketing and other materials related to the 2005 Curves food drive." Pl.'s Proposed Order at ¶ 2. Responding to plaintiff's broad request will significantly hinder and disrupt Curves' and its franchisees' day-to-day business operations.

Furthermore, in light of the pending Declaratory Judgment action pending in the Western District of Texas, which predates plaintiff's complaint for infringement, conducting such discovery before the appropriate disposition of this case in this District is adjudicated may prove to greatly waste the resources of the Court and of the parties and to be judicially inefficient. Defendant has not yet decided the precise relief it will urge the Court to grant. However, it is defendant's position that its Declaratory Judgment action pending in the Western District of Texas has priority over plaintiff's suit in this District. Any proceedings in this Court, especially the extraordinary discovery requested by plaintiff, prior to this Court's adjudication of the threshold questions of whether or how this case is to proceed in this District is premature, burdensome, and only further complicates the ultimate management of this litigation.

### D. Plaintiff's Request For Expedited Discovery Comes Long Before the Normal Discovery Process and Therefore the Fifth Factor of the Reasonableness Test Weighs in Favor of Denial.

The last factor of the reasonableness test the Court is required to consider is how far in advance of the typical discovery process the request for expedited discovery was made. *In re: Fannie Mae Derivative Litig.*, 227 F.R.D. at 143. This factor clearly weighs in favor of denying plaintiff's request. Fed. R. of Civ. P. 26(d) mandates that as a general rule, absent an agreement between the parties or an order from the Court, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. of Civ. P. 26(f) and D.C.

Local Civil Rule 16.3 require the parties to confer within 21 days before a scheduling conference is held or a scheduling order is due under Fed. R. of Civ. P. 16(b) in order to discuss, among other things, the anticipated extent of discovery, how long discovery should take and what limits should be placed on discovery.

In this case, the parties have not yet conferred as required by Fed. R. of Civ. P. 26(f) and Local Rule 16.3 nor has the Court set a date for a scheduling conference. Typical discovery in this case therefore could potentially begin three months from now, given that defendant is concurrently noting its appearance with this opposition. *See* Fed. R. Civ. P. 16(b) ("The [scheduling] order shall issue as soon as practicable but in any event within *90 days* after the appearance of a defendant and within 120 days after the complaint has been served on the defendant.") (emphasis added). Plaintiff's request for expedited discovery comes long before allowable discovery in this case will commence.

## CONCLUSION

For the reasons set forth herein, defendant respectfully requests that the Court deny plaintiff's Motion for Leave to Take Immediate Discovery to Learn the Identities of Doe Defendants.

Dated: July 8, 2005

Respectfully Submitted,

By: /s/ Basil C. Culyba

Basil C. Culyba
(D.C. Bar No. 250191)
COLLIER SHANNON SCOTT, PLLC
3050 K Street, N.W.
Suite 400
Washington, D.C. 20007
Tel.: (202) 342-8635
Fax: (202) 342-8451

*Attorneys for Defendant*
*Curves International, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOOD & FRIENDS, INC.

    Plaintiff,

v.

CURVES INTERNATIONAL, INC.,
FITNESS MANAGEMENT LLC,
CURVES CLEVELAND PARK,
and Does 1-50

    Defendants.

Civil Action No. 05-1211 (CKK)

## ORDER

This matter having come to the Court on plaintiff Food & Friends, Inc.'s ("Food & Friends") Motion for Leave to Take Immediate Discovery to Learn the Identities of Doe Defendants; and the Court having reviewed all papers submitted in support of Food & Friends' motion and all papers submitted by Defendant Curves, International, Inc. in opposition thereto; it is hereby:

ORDERED that Food & Friends' motion is denied.

Entered on this _____ day of _____, 2005.

_____
Judge, United States District Court

## CERTIFICATE OF SERVICE

I certify that on July 8, 2005, I caused a true copy of the foregoing Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to Take Immediate Discovery, the accompanying proposed Order, and the Declaration of Roger Schmidt in Support of Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to Take Immediate Discovery and the exhibits attached thereto, to be served via electronic and first class mail upon:

Steven B. Fabrizio, Esq.
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005-3823

*Attorneys for Plaintiff*
*Food & Friends, Inc.*

Dated July 8, 2005

By: _____
Basil C. Culyba
(D.C. Bar No. 250191)
COLLIER SHANNON SCOTT, PLLC
3050 K Street, N.W.
Suite 400
Washington, D.C. 20007
Tel.: (202) 342-8635
Fax: (202) 342-8451

*Attorneys for Defendant*
*Curves International, Inc.*